## FLEISCHER v. DIGNON ET AL.

1. **Fraudulent Conveyance:** EVIDENCE CONSIDERED. Evidence considered, and held insufficient to show that a conveyance by a father to his son was without consideration and in fraud of creditors.

*Appeal from Winneshiek Circuit Court.*

THURSDAY, APRIL 8.

ACTION to set aside a deed of three hundred and sixty acres of land, made by the defendant Michael Dignon to the defendant John Dignon. The plaintiff is the owner of a judgment against Michael, for the sum of $1,259.16, rendered Feb. 27th, 1877. In March, 1876, Michael conveyed all his real estate not exempt from execution, being three hundred and sixty acres, to his son John. The plaintiff claims that the conveyance was made by Michael with intent to hinder and delay his creditors. Other facts are stated in the opinion.

The District Court found that the conveyance was fraudu-

lent, and rendered a decree for the plaintiff. The defendant John Dignon appeals.

*Brown & Wellington*, for appellant.

*Faust & Warren*, for appellee.

ADAMS, CH. J.—At the time of the conveyance in question Michael Dignon was about sixty-four years of age, and of

1. FRAUDU-LENT convey-ance: evi-dence consid-ered.

intemperate habits. He did but little work, and a portion of the time was disqualified to do work or transact business. The farm, consisting of the land in question, was managed by his son John, who had lived with him since attaining his majority, and was, at the time of the conveyance, twenty-two and a half years old. Previous to the conveyance, Michael had become heavily involved. He owed, in addition to the debt due the plaintiff, about $9,000. A portion of this indebtedness was secured by mortgage upon the land, and a portion had been put in judgment. John had become liable for about $6,000 of the indebtedness. The farm was worth about $25 per acre, or $9,000, which was very nearly the entire amount of Michael's indebtedness, exclusive of the debt due to the plaintiff, which, it appears, was a debt for which Michael was liable as surety. While their affairs were in this condition, a proposition was made (by which one it does not appear), that John should purchase the farm at $25 per acre, and pay that amount of indebtedness. A schedule was made of the debts, except the debt due the plaintiff, and the amount, as shown by the schedule, exceeded, by a few dollars, the estimated value of the farm. It was agreed, however, if John's testimony can be relied upon, that he should take the farm, and pay the scheduled debts. A conveyance was made, and John took possession of the farm, and paid off $2,000 of the indebtedness. Whether he had knowledge of the debt due the plaintiff does not very clearly appear, nor do we deem it material.

Considerable evidence was taken, showing statements made

by Michael after the conveyance, concerning his purpose in making the conveyance. These could not have the effect to bind John. If the real understanding of the parties was not as testified to by John, such fact must be inferred from circumstances. The circumstances upon which the plaintiff relies are that the conveyance was made by a father to his son but little past his majority, a member of his family, and without means; and that nothing was paid down, and no security taken for payment at any time.

As a portion of the indebtedness claimed to have been assumed was not secured upon the farm, it is possible that the intention was to defeat or delay the holders of such indebtedness. To so find, however, it would be necessary for us to find against John's express testimony, and in so finding, we should be obliged to conclude, not only that he was guilty of fraud, but perjury. Now, he was introduced as a witness by the plaintiff. She has commended him to us as a person worthy of belief, so far as his general character is concerned, although, of course, she is not concluded by his testimony, if there is anything to contradict it. The circumstances relied upon by the plaintiff are, to our mind, of a very slight character, and all consistent with innocence.

It is true he was a very young man to make a purchase of a farm of three hundred and sixty acres, worth $9,000, but he had been the manager of this farm when he was still younger, having been forced to become such, as the evidence tends to show, by the dissolute habits of his father. Besides, young as he was, he had become liable for his father's indebtedness to the amount of about $6,000. We think that his circumstances are a sufficient explanation, if any is needed, of his entering into a transaction seemingly beyond his years.

It is said that he was without means. But in some way, during the time that elapsed between his purchase and the time he gave his testimony, he managed to raise $2,000, and apply it upon the indebtedness which he had assumed to pay.

It is said that he gave no security to his father. But the evidence shows very clearly that his father was not a model business man. Besides, it may be that his father was fully justified in believing that he would hold the farm strictly for the discharge of the liabilities which he had incurred in its purchase. One evidence that he was justified is that he did so hold it.

Now, if the fact is, as we believe it to be, that in the purchase of the farm, he agreed, in good faith, to pay its full value, and to pay not one cent to his father, but the whole to his father's creditors, then the purchase was not fraudulent, whatever other indebtedness may have been left unprovided for. If he agreed, for a valuable consideration, to pay $9,000 of his father's indebtedness, he thereby became liable to his father's creditors for that amount, and he remains liable (except so far as the indebtedness has been discharged), notwithstanding, by the decree of the court below, the plaintiff was allowed to subject the consideration received by him to the payment of her debt.

In our opinion, the court below erred, and the judgment must be                                        REVERSED.